# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| EUGENE FLINN, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Docket No. 1:18-cv-11599-WGY |
| | ) |
| SANTANDER BANK, N.A. and | ) |
| SANTANDER HOLDINGS USA, INC. | ) |
| | ) |
| Defendants. | ) |

_____)

## DEFENDANTS' REPLY MEMORANDUM IN RESPONSE TO PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Plaintiff's Complaint against the Defendants[1] and his Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint (the "Opposition") are misguided in that they are premised upon two (2) fundamental contentions which fail to state a claim upon which relief can be granted.

*First,* Plaintiff's contention that Defendants violated obligations to Plaintiff and/or federal law in the opening of the subject account, in protecting Plaintiff's information and money, in not sending correspondence to Plaintiff, and for generally failing to take proper security measures, does not pass the muster of Fed. R. Civ. P. 12(b)(6).  *Second*, Plaintiff's contention that Ms. Oliveira's actions were in clear violation of the terms of the subject Power of Attorney ("PoA") such that they triggered a duty on the part of Santander to make further inquiry to prevent Ms. Oliveira's fraud also fails to state a claim upon which relief can be granted.   Because these contentions do not hold true, and because Plaintiff's various other claims likewise fail for the

---

[1] While both Santander Bank, N.A. and Santander Holdings USA, Inc. are parties to the present action, Plaintiff alleges no facts as to Santander Holdings.

reasons set forth in the Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's

Complaint ("Memo"), Plaintiff's Complaint must be dismissed.

## I.    DEFENDANTS' COMPLIED WITH THEIR OBLIGATIONS AND FEDERAL LAW IN THE HANDLING OF THE ACCOUNT

Plaintiff fails to point to any specific provision of any agreement or of federal law that

would require Defendants to take the actions Plaintiff suggests should have been taken. In

support of his argument, Plaintiff directs the court to the signature card attached to the

Opposition as **Exhibit F** which states simply that "Federal Law requires us to obtain sufficient

information to verify your identity" and contends that Defendants' failure to have a face-to-face

meeting with Plaintiff, to call him, or to have him fill out a separate signature card is a violation

of both the terms of the signature card and federal law.

Specifically, Plaintiff alleges that the Federal Bank Secrecy Act (31 U.S.C., § 5311) and

31 C.F.R., § 1020.220, et. seq. requires financial institutions to create a customer identification

program to safeguard personal financial information and prevent against bank fraud and that had

Defendants complied with those regulations, Ms. Oliveira's fraud would have been evident.

The Customer Identification Program ("CIP") required pursuant to 31 C.F.R., § 1020.220

et. seq., and to the extent applicable, the Federal Bank Secrecy Act, do not require the

Defendants to take any of the actions that Plaintiff purports are violations.  31 C.F.R., § 1020.220

requires only that the CIP "include risk-based procedures for verifying the identity of each

customer to the extent reasonable and practicable.  The procedure must enable the bank to form a

reasonable belief that it knows the true identity of each customer."  31 C.F.R., § 1020.220(a)(2).

31 C.F.R., § 1020.220(a)(2)(i)(A) requires only that a bank obtain the customer's name, date of

birth, residential or business address, tax payer identification number, and verification of

identity, which, for an individual, may be proved through an unexpired government-issued

identification with a photograph.  The signature card submitted by Plaintiff evidences compliance with the requirements of 31 C.F.R., § 1020.220 et. seq. as it contains Ms. Oliveira's name, her address, her date of birth, her social security number, and her New Hampshire driver's license information.

Nothing in 31 C.F.R., § 1020.220 et. seq. can be construed as a requirement that the Defendants separately confirm the identity of the Plaintiff who did not open the account but is listed as the beneficiary of the account.  Further, and instructive in the present case, 31 C.F.R., §§ 1020.220(a)(2)(ii)(A)(2) and 1020.220 (a)(2)(ii)(C) provide that, in the case of a customer that is not an individual, such as a corporation, a partnership, or a trust, a bank may verify identity through documents showing the existence of the entity, such as certified articles of incorporation, a government-issued business license, a partnership or trust agreement and, based upon the bank's risk assessment of a new account opened by a non-individual, the bank will obtain information about individuals with control or authority over such an account.  None of the requirements of 31 C.F.R., § 1020.220 et seq. can be construed to require a bank to look behind documentation evidencing an individual's authority, to make inquiry of corporate executives, partners, and/or beneficiaries to confirm their identity and the authenticity of the documents presented to the Bank, but that is what Plaintiff alleges the Defendants were required to do.

There is no support for such a theory.  The Defendants were presented with a PoA which, on its face, appeared valid and proceeded to verify the identity of Plaintiff's apparent agent, and the individual who would administer the account, Ms. Oliveira.  Nothing further was required by the Federal Bank Secrecy Act, 31 C.F.R., § 1020.220 et. seq., or any other statute or agreement to which Plaintiff has directed this Court.  As Plaintiffs have therefore failed to identify any duty

owed by the Defendants to Plaintiff, much less a breach of said duty, or any violation of any law on the part of the Defendants, Plaintiff's claims must be dismissed.

## II.     DEFENDANTS HAD NO DUTY TO INVESTIGATE MS. OLIVEIRA'S TRANSACTIONS NOR DID THEY HAVE ACTUAL KNOWLEDGE OF FRAUD

Plaintiff alleges that the PoA prohibited Ms. Oliveira from self-dealing and, because Ms. Oliveira engaged in self-dealing, Defendants had a duty to investigate.  As Defendants noted in their Memorandum in Support of Motion to Dismiss Plaintiff's Complaint ("Memo") at p. 6, the PoA does not contain an outright prohibition against self-dealing, but indicates that Ms. Oliveira is "not entitled to use the money or property for your own benefit or to make gifts to yourselves or others *unless the Durable Power of Attorney specifically gives you the authority to do so*." Further, paragraph 8 of the PoA gives Ms. Oliveira the authority "[t]o give, transfer or convey any of my assets to charities and persons of natural affection to whim [sic] I would normally consider making such gifts, transfers, or conveyances, having in mind the ultimate objective of such gifts, transfers or conveyances … "

Plaintiff, in reliance on *Grabowski v. Bank of Boston*, 997 F.Supp.111 (D.Mass. 1995), contends that Defendants were aware that Ms. Oliveira was exceeding her powers through Defendants' normal channels of business and had a duty to act.  Plaintiff's reliance is misplaced. In *Grabowski*, it was clear to the bank that the agent was exceeding his authority because the operative power of attorney required that, at all times, "the account shall contain cash and/or Prime Bank Instruments of Credit to a purchasing bank on behalf of [account holder] in an amount not less than the initial cash deposited." *Grabowski*, 997 F.Supp., at 116.  The agent, however, was withdrawing cash without replacing it with prime bank instruments or invoices with an equivalent face value and, thus, the *Grabowski* court held the bank liable because "[t]he

Bank could easily monitor the use (or misuse) of the power simply by noting the balance of the account, its normal procedure." *Id.*, at 127.

The facts of *Grabowski* are inapposite to the facts of the present case. Clearly, determining whether Ms. Oliveira, her husband, and her parents were persons of natural affection to whom the Plaintiff would normally consider making such gifts was not within the confines of the Defendants' normal channels of business and, thus, they had no duty to investigate or take further action to determine whether Ms. Oliveira was exceeding her authority. "In sum, a court should ordinarily not require a Bank to monitor an agent's authority because in most circumstances this would require an investigation outside the confines of the banking transaction." *Id.* Absent actual knowledge that Ms. Oliveira was misappropriating funds or intended to misappropriate funds, Defendants owed no duty to take reasonable steps to prevent the misappropriation. *Go-Best Assets Ltd. V. Citizens Bank of* Massachusetts, 463 Mass. 50, 56, 972 N.E.2d 426 (2012). As Defendants had no duty to investigate Ms. Oliveira's transactions and cannot be charged with knowledge of her fraud, Plaintiff's complaint must be dismissed.

## III.   DEFENDANTS' RELIANCE UPON THE "HOLD HARMLESS" PROVISION OF THE POA

Plaintiff alleges that Defendants cannot claim reliance upon the "hold harmless" provision contained in the PoA because they cannot, in good faith, maintain that they relied upon the PoA. As evidenced in the preceding section, Defendants did justifiably rely on the language of the PoA, were not required to make further investigation, and are therefore entitled to the protections of the hold harmless provision.

## IV.   BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff alleges that Defendants have breached the covenant of good faith and fair dealing, although breach of the covenant is not one of the Plaintiff's causes of action and

Defendants contend that it is therefore improperly raised before this Court.  In any event, in order to prevail on a claim for breach of the covenant of good faith and fair dealing, "the [P]laintiff must 'present [] evidence of bad faith or an absence of good faith.'"  *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013), citing *T.W. Nickerson, Inc. v. Fleet Nat'l Bank*, 456 Mass. 562, 924 N.E.2d 696, 703-04 (2010).  "Lack of good faith 'carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will.'"  *Id.*, citing *Hartford Accident & Indem. Co. v. Millis Roofing & Sheet Metal, Inc.*, 11 Mass.App.Ct. 998, 418 N.E.2d 645, 647 (1981).  Plaintiff raises no allegations that would rise to the level of bad faith or absence of good faith necessary to sustain a claim for breach of the covenant of good faith and fair dealing.

## V.   VIOLATION OF G.L. c. 93A

Plaintiff contends that Defendants' violation of the Gramm Leach-Bliley Act, the Bank Secrecy Act and violation of state laws regarding privacy of information (presumably Plaintiff refers to 201 CMR 17.00 et. seq.) give rise to G.L. c. 93A liability.  Assuming *arguendo* that such violations would give rise to 93A liability, which Defendants do not concede, Defendant has established that no such violation occurred and, thus, there can be no liability pursuant to G.L. c. 93A.

Further, while 940 CMR 3.16 (3) provides that an act or practice is a violation of G.L. c. 93A, § 2 if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection," the "Massachusetts Attorney General's regulatory authority to 'make rules and regulations interpreting' Chapter 93A, §2(a), does not extend so far as to permit her to allow a

6

plaintiff to show that a defendant has violated an independent statute in lieu of satisfying Chapter 93A's substantive requirements of showing the complained-of act was *both* unfair and deceptive *and* that it occurred in trade or commerce." *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109, 120 (1st Cir. 2014), citing *Klairmont v. Gainsboro Rest., Inc.*, 465 Mass. 165, 987 N.E.2d 1247 (2013).[2] *See also O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F.Supp.3d 441, 452-53 (D.Mass. 2018).  Plaintiff cannot show that Defendants actions are of such an egregious, non-negligent nature that they would rise to the level of unfair or deceptive.  *See Walsh v. TelTech Systems, Inc.*, 821 F.3d 155, 160 (1st Cir. 2016), citing *Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014).  Further, as Defendants were not in breach of any statute, contractual agreement or duty owed to Plaintiff, as discussed above and in Defendants' Memorandum of Law, Plaintiff's 93A claims must be dismissed.

## VI.      BREACH OF MASSACHUSETTS COMMERCIAL LAW

Plaintiff contends that Defendants are strictly liable for breaches of G.L. c. 106, § 4-401(1) because Plaintiff neither signed for nor benefitted from monies debited from his account. As set forth in Defendants Memorandum of Law and herein, however, the monies debited from Plaintiff's account were authorized by the PoA and Defendants had no duty to further investigate Ms. Oliveira's authority or her individual transactions.  That Plaintiff did not personally sign the checks drawn on the account is of no consequence and does not establish liability under the statute.

---

[2]      Though violation of an independent statute may constitute a violation of G.L. c. 93A without satisfying 93A's substantive requirements if the language of the statute provides that violation thereof is a per se violation of G.L. c. 93A, this is not the case with regard to the statutes cited by the Plaintiff.  *See McDermott*, 775 F.3d, at 123-24.

**VII.    EXCEPTIONS TO THE APPLICATION OF THE STATUTE OF LIMITATIONS**

Plaintiff asserts that Counts I and II (Negligence), V and VI (G.L. c. 106, § 4-401/unauthorized withdrawals), Counts VII and VIII (G.L. c. 106, § 3-420/Statutory Conversion) and Counts XI and XII (Common Law Conversion) are not barred by the applicable statutes of limitations due to tolling under various theories, none of which are persuasive.  As Defendants set forth in their Memorandum of Law, Plaintiff filed a complaint against Ms. Oliveira in Middlesex Superior Court, Civil Action No. 1581-CV-03581 on May 26, 2015 ("2015 Complaint").  At paragraphs 47 and 49 of the 2015 Complaint, Plaintiff alleged that Ms. Oliveira used the PoA to create several bank accounts with Defendants and that he learned of the existence of those accounts in March of 2015.  Plaintiff instituted the present action with the Middlesex Superior Court more than three years later on or about June 25, 2018.

     a.    *The Discovery Rule*

Plaintiff contends that the statute of limitations was tolled until July of 2015 when Plaintiff obtained a Keeper of Record Deposition Subpoena Response from Defendants pursuant to the Discovery Rule.  Case law does not support Plaintiff's argument.  Under the Discovery Rule, "[a] plaintiff is considered to be on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant." *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006), citing *Szymanski v. Boston Mut. Life Ins. Co*., 56 Mass.App.Ct. 367, 778 N.E.2d 16, 20-21 (2002).  Further, "[t]he discovery rule does not require that a plaintiff know the specific details pertaining to an alleged harm, but instead it imposes a 'duty to investigate' on a plaintiff who has cause for concern." *Id*., at 188, citing *Doucette v. Handy & Harmon*, 35 Mass.App.Ct. 724, 625 N.E.2d 571, 573 (1994). Plaintiff clearly was on inquiry notice as of March 2015 when he became aware of the bank

accounts opened with Defendants as he knew that Ms. Oliveira had stolen money from him and thus he had a duty to investigate. The Discovery Rule, therefore, does not operate to toll the statute of limitations beyond March of 2015.

     b.  *Fraudulent Concealment*

Plaintiff further contends that Defendants concealed Ms. Oliveira's fraud and, therefore, the statute of limitations was tolled until Plaintiff had actual knowledge of the harm to him which occurred in July of 2015. Where, as here, Defendants and Plaintiff did not have a fiduciary relationship, the statute of limitations may be tolled under the fraudulent concealment doctrine "if the wrongdoer … concealed the existence of a cause of action through some *affirmative act done with intent to deceive*." *Id*., at 189, citing *Puritan Med. Ctr., Inc. v. Cashman*, 413 Mass. 167, 596 N.E.2d 1004, 1010 (1992). Plaintiff only half-heartedly alleges any affirmative act on the part of Defendants and his allegations are not persuasive.

**First**, Plaintiff alleges that Defendants continued to routinely administer the account as if nothing was wrong. As discussed herein and in Defendants' Memorandum of Law, Defendants had no reason to know that anything was wrong. Regardless, "mere silence is not a fraudulent concealment … there must be something in the nature of positive acts with intent to deceive." *Tagliente v. Himmer*, 949 F.2d 1, 6 (1st Cir. 1991), citing *Lynch v. Signal Finance Co. of Quincy*, 367 Mass. 503, 507, 327 N.E.2d 732, 735 (1975).

**Second**, Plaintiff alleges that Defendants fraudulently concealed Ms. Oliveira's actions by sending bank statements to Ms. Oliveira and not to Plaintiff and failing to contact Plaintiff to verify the account. As discussed above, Defendants were not required to send Plaintiff banking statements or verify the account with him. Further, Plaintiff's conclusion that Defendants failure to contact him or send him bank statements was done with an intent to deceive him is simply not

plausible.  The statute of limitations, therefore, was not tolled by the doctrine of fraudulent concealment.[3]

     c. *Equitable Tolling*

Likewise, Plaintiff contends that Defendants' concealment of its activities tolls the statute of limitations under the doctrine of equitable tolling.  The doctrine of equitable tolling is one that "should be invoked sparingly" as it "is the exception rather than the rule; resort to its prophylaxis is deemed justified only in extraordinary circumstances."  *Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir. 2004), citing *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir. 2002).  "At a minimum, equitable tolling is appropriate only when circumstances beyond the petitioner's control have prevented him from filing on time.  *Id.*, citing *Lattimore v. Dubois*, 311 F.3d 46, 55 (1st Cir. 2002).  Equitable tolling is intended to prohibit defendants from escaping liability through their misleading conduct that prevents the plaintiff from obtaining essential information.  *Thompson v. Mahoney*, 68 Mass.App.Ct. 1120, 1120 (2007) (1:28 decision), citing *Protective Life ins. Co. v. Sullivan*, 425 Mass. 615, 631 - 632. As explained above, Defendants did not engage in any misleading conduct nor conceal their activities.  Equitable tolling is therefore not warranted.

As set forth in the Defendants' Memorandum of Law, Plaintiff's Counts I and II (Negligence), V and VI (Breach of G.L. c. 106, § 4-401), VII and VIII (Breach of G.L. c. 106, § 3-420 (Statutory Conversion)), and XI and XII (Common Law Conversion) are time-barred.

---

[3]    Defendants also note that under Fed.R.Civ.P. 9(b), Plaintiff must "plead with particularity the facts giving rise to the fraudulent concealment claim."  *Epstein*, 460 F.3d, at 189, citing *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996).  This requires Plaintiff to specify "in the complaint the time, place, and content of the alleged false or fraudulent representations," which Plaintiff has failed to do with sufficient specificity here. *Id.*, citing *Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991).

## CONCLUSION

For the reasons set forth herein and in their Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Complaint, Defendants respectfully request that this Honorable Court dismiss Plaintiff's Complaint in its entirety.

Respectfully Submitted,

**PARKER IBRAHIM & BERG LLP**
*Attorneys for Defendants,*
Santander Holdings USA, Inc., and
Santander Bank, N.A.

*/s/ Wayne E. George*
Wayne E. George, Esq. BBO# 656286
Jeffrey D. Adams, Esq. BBO# 662697
One Financial Center, 15th Floor
Boston, MA 02111
Phone: 857.302.5752
Facsimile: 617.918.7878
Email: wayne.george@piblaw.com

Date:  November 30, 2018

## CERTIFICATE OF SERVICE

I, Wayne E. George, Esq., hereby certify that a true and correct copy of the foregoing document was served upon all parties or counsel of record via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on November 30, 2018.

*/s/ Wayne E. George*
Wayne E. George