```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                   )
EUGENE FLINN,                      )
                Plaintiff,         )
                                   )
       v.                          )      CIVIL ACTION
                                   )      NO. 18-11599-WGY
SANTANDER BANK, N.A.,              )
SANTANDER HOLDINGS USA, INC.       )
                                   )
                Defendants.        )
_____)

YOUNG, D.J.                                    February 4, 2019
```

**MEMORANDUM OF DECISION**

I.  **INTRODUCTION**

This suit, removed from the Massachusetts Superior Court sitting in and for the County of Middlesex, is the second episode in this Court of the saga of Eugene Flinn ("Flinn") and his allegedly stolen fortune.  See Flinn v. Minnesota Life Ins. Co., Civ. A. No. 18-10868-WGY, 2018 WL 5982021, at *1 (D. Mass. Nov. 14, 2018); Notice of Removal, Flinn v. FMR LLC, Civ. A. No. 18-10970-WGY (D. Mass. May, 14, 2018), ECF No. 1.  This Court need only make a cameo appearance in this episode, however, because it lacks subject matter jurisdiction over Flinn's cause. Therefore, the Court remands the case to Massachusetts Superior Court for it to unspool in full.

## II. BACKGROUND

The Court briefly summarizes Flinn's allegations relating to subject matter jurisdiction.[1]  After Flinn's wife, Joyce Flinn, passed away, his sister-in-law, Joan Oliveira ("Oliveira"), convinced him that his wife had left all her assets to Oliveira in a will.  Compl. Jury Demand ("Compl.") ¶ 15, ECF No. 1-1.  Flinn now asserts that his wife passed away intestate, Compl. ¶ 12, and that Oliveira stole from Flinn's estate assets due to pass to him, Compl. ¶ 22.

Flinn alleges that Oliveira squirreled away more than $800,000 of Flinn's funds in Santander Bank, N.A. ("Santander Bank") accounts.  Compl. ¶¶ 24-25.  According to Flinn, she set up a fiduciary account in Flinn's name, using a forged power of attorney for Flinn.  Compl. ¶¶ 19, 21, 24.  Flinn further asserts that Santander Bank and its holding company, Santander Holdings USA, Inc. ("Santander Holdings" and, collectively with Santander Bank, "Santander") stood by while Oliveira pillaged the account for her personal expenses.  Compl. ¶¶ 17-41.  Flinn alleges that Oliveira frittered away all the account's cash on herself, her husband, and her mother -- and that she never once paid Flinn from the account.  Compl. ¶¶ 25-26, 41.

---

[1] For a further fleshing-out of the alleged scheme to defraud Flinn, see Flinn, 2018 WL 5982021, at *1.

Flinn discovered Oliveira's alleged fraud and filed a state court suit against her in May 2015. Compl. And Jury Demand, Flinn v. Oliveira, Civ. A. No. 15-3581 (Mass. Super. Ct. May 26, 2015), Dkt. No. 1. Oliveira eventually filed for bankruptcy, leading Flinn to "recover[] only a fraction of the funds stolen." Compl. ¶¶ 45-46. Flinn subsequently initiated this suit in Middlesex Superior Court against Santander on June 25, 2018. Compl. 1. In this action, Flinn alleges that Santander is liable to him for negligence, breach of contract, various violations of Massachusetts law governing bank deposits, conversion, breach of fiduciary duty, and violation of the Massachusetts Consumer Protection Act, Massachusetts General Laws chapter 93A ("Chapter 93A"). Compl. ¶¶ 53-149.

Although Flinn's complaint alleges that both Santander entities maintain principal places of business in Boston, Compl. ¶¶ 4-6, Santander removed the case to this Court in July 2018. Notice of Removal ("Notice"), ECF No. 1. Santander asserted that diversity jurisdiction obtained because Santander Bank's home office is in Delaware. Notice ¶ 5 (citing 12 U.S.C. § 1464(x); Wachovia Bank, N.A. v. Schmidt, 546 U.S. 303, 306 (2006); Roberts v. Santander Bank, N.A., 141 F. Supp. 3d 164, 165 (D. Mass. 2015) (Burroughs, J.)). Santander neither controverted Flinn's allegation that Santander Holdings' principal place of business is in Boston nor claimed that Flinn

fraudulently joined Santander Holdings to destroy diversity.
See generally Notice; Compl. ¶¶ 5-6.

Santander moved to dismiss the complaint for failure to state a claim on October 30, 2018, Defs.' Mot. Dismiss Pl.'s Compl., ECF No. 18, and the parties fully briefed the motion, Defs.' Mem. Law Supp. Mot. Dismiss Pl.'s Compl. ("Santander Mem."), ECF No. 19; Pl.'s Mem. Law. Supp. Opp'n Defs.' Mot. Dismiss ("Flinn's Opp'n"), ECF No. 23; Defs.' Reply Mem. Resp. Pl.'s Mem. Law. Supp. His Opp'n Defs.' Mot. Dismiss Pl.'s Compl. ("Santander Reply"), ECF No. 27.  While Flinn did not move to remand, he observed in his opposition to Santander's motion to dismiss that "the Defendants do not dispute that Santander Holdings has a principal place of business in Massachusetts, and therefore, knew that removal was improper in the first instance."  Flinn's Opp'n 3.

**III. ANALYSIS**

Although Flinn does not challenge this Court's subject matter jurisdiction, this Court may consider the issue on its own motion.  See 28 U.S.C. § 1447(c); Miara v. First Allmerica Fin. Life Ins. Co., 379 F. Supp. 2d 20, 26 (D. Mass. 2005) (citing Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 392 (1998)).  Here, the Court remands the case because no party disputes that both Flinn and Santander Holdings are Massachusetts citizens, thereby destroying diversity.  Compl.

¶¶ 1, 6.  Nor does Flinn's complaint furnish any other grounds for subject matter jurisdiction.  Cf. Flinn, 2018 WL 5982021, at *4 (determining that the Court had diversity jurisdiction where a federal question -- the defendants' proposed basis of removal jurisdiction -- was absent (citing Sexual Minorities Uganda v. Lively, 899 F.3d 24, 32 (1st Cir. 2018)).

### A. Diversity Jurisdiction

In its Notice of Removal, Santander suggests solely that diversity of citizenship provides this Court with subject matter jurisdiction.  Notice ¶ 3 (citing 28 U.S.C. § 1332).  "Section 1332(a)(1) provides that this Court 'shall have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.'"  Wolf v. Altitude Costa LLC, Civ. A. No. 18-01422-WGY, 2018 WL 5984109, at *2 (D.P.R. Nov. 14, 2018).  Where, as here, a plaintiff sues two defendants, "the presence of but one nondiverse party divests the district court of original jurisdiction over the entire action."  See DCC Operating, Inc. v. Siaca (In re Olympic Mills Corp.), 477 F.3d 1, 6 (1st Cir. 2007) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806)).

Santander Holdings and Flinn are both Massachusetts citizens, thereby destroying complete diversity.  Compl. ¶¶ 1,

6; see also Jon Chesto, Scott Powell Is Running Santander Under Less Stress, Boston Globe (Nov. 11, 2018), https://www.bostonglobe.com/business/2018/11/11/running-santander-under-less-stress/woazzP2nR6YF83MJCa7oGM/story.html (describing "Santander US chief executive's quarters overlooking Boston's State Street"). Therefore, Santander Holdings' presence divests this Court of subject matter jurisdiction.[2]

---

[2] Although the Court has no occasion to reach the issue, it observes that Santander Bank's inclusion in this action might also destroy diversity. The Court doubts Santander Bank's assertion that, for diversity jurisdiction purposes, it is only a citizen of Wilmington, Delaware, notwithstanding its apparent principal place of business, Boston, Massachusetts. Notice ¶ 5 (citing Wachovia Bank, 546 U.S. at 306; Roberts, 141 F. Supp. 3d at 165 (deciding that Santander Bank is only a citizen of Delaware without analyzing whether a national association is a citizen of the state where its principal place of business is located)); see also Chesto, supra; Todd Wallack, Sovereign Making Hub Its Home Base, Boston Globe (Aug. 16, 2011), http://archive.boston.com/business/articles/2011/08/16/sovereign_bank_making_boston_its_home_base/ (reporting that Santander Bank -- then known as Sovereign Bank -- moved its headquarters from Pennsylvania to Massachusetts). If the issue were to manifest itself more directly, the Court doubts that it would adopt Santander Bank's crabbed reading of Wachovia Bank.
   Section 1348 of chapter 28 of the United States Code provides that national banking associations, such as Santander Bank, are deemed citizens of the "States in which they are located." In Wachovia Bank, the Supreme Court rejected the Fourth Circuit's rule that national associations were deemed citizens of every state in which they maintained a branch and instead adopted a rule that they are deemed citizens of the state that their articles of association name as their "main office." 546 U.S. at 307. The Court so held in order to provide both state and federally chartered banks with similar access to a federal forum. See id.
   The federal circuit courts have treated Wachovia Bank as leaving open the question whether a national association is

located where it maintains its principal place of business. See OneWest Bank, N.A. v. Melina, 827 F.3d 214, 218-19 (2d Cir. 2016) (citing Rouse v. Wachovia Mortg., FSB, 747 F.3d 707, 708 (9th Cir. 2014); Wells Fargo Bank, N.A. v. WMR e-PIN, LLC, 653 F.3d 702, 706-10 (8th Cir. 2011); Nguyen v. Bank of Am., N.A., 516 F. App'x 332, 334 n.1 (5th Cir. 2013); Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006)). All these courts limited national associations' citizenship to their main offices, on the ground that, when Congress enacted the current language in section 1348 in 1948, sections 1348 and 1332 provided the same standard for the citizenship of national associations and corporations -- deeming them citizens where they were "located." See, e.g., OneWest Bank, 827 F.3d at 219-20. Ten years after that enactment, Congress amended section 1332 to deem corporations citizens of the states where they are incorporated and maintain a principal place of business but made no such change to the citizenship standard for national associations in section 1348. Id. The argument thus goes that Congress must have intentionally disturbed the parity of jurisdiction between national associations and corporations, and so only Congress may bring it back into equilibrium. Id.

No party raised this issue and the First Circuit did not decide it in McKenna v. Wells Fargo Bank, N.A., the one case in which the First Circuit has cited Wachovia Bank. 693 F.3d 207, 212 (1st Cir. 2012); see also United States v. L. A. Tucker Truck Lines, Inc., 344 U.S. 33, 38 (1952) (observing that an opinion was neither a binding precedent on an argument not "raised in briefs or argument nor discussed in the opinion of the Court"); Official Comm. of Unsecured Creditors for the Bankr. Estate of Bos. Reg'l Med. Ctr., Inc. v. Ricks (In re Bos. Reg'l Med. Ctr., Inc.), 328 F. Supp. 2d 130, 146 (D. Mass. 2004) (Wolf, J.) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quoting Webster v. Fall, 266 U.S. 507, 511 (1925))). As a result, if the issue were to arise, this Court would consider the question afresh, aided by the persuasive guidance of the circuit courts' consensus.

In the Court's view, however, the circuit courts' consensus appears to miss Wachovia Bank's point: "There is no enduring rigidity about the word located." 546 U.S. at 314 (citing Citizens & S. Nat'l Bank v. Bougas, 434 U.S. 35, 44 (1977)). Justice Ginsburg in Wachovia Bank specifically compared subject matter jurisdiction over national associations with that over corporations:

[7]

> "[L]ocated," as its appearances in the banking laws reveal, is a chameleon word; <u>its meaning depends on the context in and purpose for which it is used</u>. . . . Concerning access to the federal court system, § 1348 deems national banks "citizens of the States in which they are respectively located." <u>There is no reason to suppose Congress used those words to effect a radical departure from the norm.</u> An individual who resides in more than one State is regarded, for purposes of federal subject-matter (diversity) jurisdiction, as a citizen of but one State. Similarly, a corporation's citizenship derives, for diversity jurisdiction purposes, from its State of incorporation and principal place of business. It is not deemed a citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction. <u>Reading § 1348 in this context, one would sensibly "locate" a national bank for the very same purpose</u>, i.e., qualification for diversity jurisdiction, in the State designated in its articles of association as its main office.

Id. at 318 (emphasis added) (internal citations and quotations omitted). In fact, Justice Ginsburg predicted that the absence of the phrase "principal place of business" from section 1348 would have "scant practical significance" because in most cases those sites would be the same. Id. at 317 n.9.

The Supreme Court did not envision a wooden, formalistic application of Wachovia Bank. Instead, it sought a functional reading of section 1348 that would provide roughly equal access to the federal courts for national associations and corporations. The circuit courts' consensus "rule goes too far in the opposite direction and places national banks on superior footing in their access to federal courts as compared to other corporations." Rouse, 747 F.3d at 716 (Gould, J., dissenting).

Furthermore, if the question came up, the Court would consider the policies behind Congress's statutory grant of diversity jurisdiction and the purpose of amending section 1332. The House Report on the amendments adding "principal place of business" to section 1332 states:

> The underlying purpose of diversity of citizenship legislation (which incidentally goes back to the beginning of the Federal judicial system, having been established by the Judiciary Act of 1789) is to provide a separate forum for out-of-State citizens against the prejudices of local courts and local juries by making

[8]

**B. Federal Question Jurisdiction**

At the hearing, Santander attempted to shift course and defended removal on federal question jurisdiction grounds. See 28 U.S.C. § 1331 (providing federal district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Where, as here, the complaint contains only state law claims, "federal [question] jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court

---

> available to them the benefits and safeguards of the Federal courts. <u>Whatever the effectiveness of this rule, it was never intended to extend to local corporations which, because of a legal fiction, are considered citizens of another State</u>. It is a matter of common knowledge that such incorporations are primarily initiated to obtain some advantage taxwise in the State of incorporation or to obtain the benefits of the more liberal provisions of the foreign State's corporation laws. Such incorporations are not intended for the prime purpose of doing business in the foreign State. It appears neither fair nor proper for such a corporation to avoid trial in the State where it has its principal place of business by resorting to a legal device not available to the individual citizen.

H.R. Rep. No. 1706, at 4 (1958) (emphasis added). Congress thus intended to clarify section 1332, not so much to change it, so that it conformed to the purpose of diversity jurisdiction. See id. Because section 1332's drafters seemed to have thought that they merely had specified the two sites where a corporation may be deemed to be located, the Court would hesitate before reading too much into the absence of a contemporaneous amendment to section 1348. For these reasons, the Court reserves the issue of whether a national association may be deemed a citizen of not only its home office, but also its principal place of business.

without disrupting the federal-state balance approved by Congress." See Gunn v. Minton, 568 U.S. 251, 258 (2013) (citing Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313-14 (2005)). Alternatively, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 17 (1st Cir. 2018) (observing that the Labor Management Relations Act, 29 U.S.C. § 185(a), completely preempts state law claims relating to collective bargaining agreements) (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)).

Santander implicitly spurned reliance on the former theory by proffering only that Lawless legitimizes federal question jurisdiction here.[3] The Court observes that Flinn's complaint fails at Gunn's first prong, for it does not "necessarily raise[]" a federal issue. See Gunn, 568 U.S. at 258. True, the complaint's Chapter 93A counts allege Santander violated the Gramm-Leach-Bliley and Federal Bank Secrecy acts. See Compl. ¶¶ 128-29 (citing 15 U.S.C. § 6801 et. seq.; 31 U.S.C. § 5311; 31 C.F.R. § 1020.220 et. seq.). But Chapter 93A claims do not require proof of a violation of a federal statute. See Mass.

---

[3] Santander first indicated that the Court had federal question jurisdiction at the December 13, 2018 hearing.

Gen. Laws ch. 93A § 2(a); cf. McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 775 F.3d 109, 122-24 (1st Cir. 2014) (citing Klairmont v. Gainsboro Rest., Inc., 465 Mass. 165 (2013)) (observing an act violates Chapter 93A if it is either unfair or deceptive or if an independent Massachusetts or federal statute states that its breach violates Chapter 93A or the Federal Trade Commission Act). Consequently, Santander did not misfire when it forsook reliance on Gunn generating jurisdiction.

But it did misfire for two reasons when it compared Flinn's complaint to that of the Lawless plaintiff. First, the cases' facts clash, so Lawless does not directly control. There, the First Circuit in Lawless determined that the Labor Management Relations Act provided the sole recourse for a plaintiff seeking unpaid wages under a collective bargaining agreement, 895 F.3d at 18-19, whereas Flinn does not invoke any such labor issues here.

Second, and more generally, Santander fails to provide an argument -- and the Court can see none itself -- for why federal banking law completely preempts these Chapter 93A claims. The Supreme Court has applied this doctrine sparingly: to "labor contracts, claims for benefits from plans regulated by ERISA, and usury claims against federally chartered banks." See Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 45 (1st Cir. 2008) (citing Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557

(1968); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987); Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003)). The "common denominator" of every recognized completely preempted claim is "exclusive federal regulation of the subject matter of the asserted claim" and the "presence of a counterpart federal cause of action." Fayard, 533 F.3d at 46. As far as the Court can tell, no counterpart federal cause of action exists for Flinn's claims. See 15 U.S.C. § 6805 (permitting certain federal and state agencies to enforce the Gramm-Leach-Bliley Act, but not creating a private cause of action); 31 U.S.C. § 531 (authorizing the Secretary of Treasury to assess civil penalties under the Bank Secrecy Act and to file civil actions, but not creating a private cause of action).

The Court thus concludes that Flinn's complaint does not "necessarily raise" a federal issue, and federal law does not completely preempt his complaint.

**IV. CONCLUSION**

For the foregoing reasons, on December 13, 2018, the Court REMANDED this case to the Massachusetts Superior Court sitting in and for the County of Middlesex, ECF No. 20.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE